## SULLIVAN v. BALL.

1. EVIDENCE—REMAINDERMEN—LIFE TENANT—DEEDS.—DECLARATIONS of life tenant in absence of grantee, impeaching her deed, years after its execution and record, in which she reserves to herself a life estate, is not competent against the remainderman and his grantee after her death.

2. JUDGMENT—COLLATERAL PROCEEDING.—FRAUD in a judgment may be attacked in a collateral proceeding.

3. FRAUD—DEBTOR AND CREDITOR—ATTORNEY.—Services rendered by an attorney in setting aside a cloud upon the title to real estate are a present and valuable consideration for a conveyance to him of a large part of such realty, in accordance with an agreement previously made as against the creditors of his client.

4. FINDING OF FACT—IBID.—Doubt of Circuit Judge as to *bona fides* of plaintiff's debt and of insolvency of deceased debtor, sustained.

5. DEBTOR AND CREDITOR.—No evidence to show that deed was made to hinder, delay or defraud creditors.

6. IBID.—ATTORNEY.—A conveyance to an attorney of a large portion of property, which he recovers for a client, is not a fraud as against his client's creditors.

7. HARMLESS ERROR.—A mere abstract ruling can do no harm.

8. TRUST.—No evidence of a trust here. *Distinguished from Ferguson* v. *Harrison,* 41 S. C., 430.

9. DEBTOR AND CREDITOR—LAST ILLNESS—INSOLVENCY.—No finding of insolvency here, and hence rule that an insolvent debtor cannot transfer his property upon consideration in part to pay expenses of last illness, does not apply.

Before TOWNSEND, J., Laurens, January, 1899. Affirmed.

Action by Jefferson Sullivan against B. W. Ball and T. H. Henderson, to set aside deed. From Circuit decree, plaintiff appeals.

*Mr. W. H. Martin,* for appellant, cites: *Declarations of Miss Shockley competent, because made while in possession of land, and she reserved a life interest and a beneficial interest—payment of expenses of last illness:* 3 S. C., 577; 19 S. C., 477. *Grantee held property in trust for creditors of Miss Shockley:* 41 S. C., 340; 58 Ia., 55.

*Messrs. L. W. Simkins* and *Simpson & Barksdale,* contra, cite: *Declarations of debtor after conveyance are only admissible after proof of collusion between grantor and grantee to defraud creditors:* 17 S. C., 282; 32 S. C., 582. *Transaction with Col. Ball was a bona fide sale and not assignment:* 24 S. C., 249. *Is deed void for fraud?* 38 S. C., 457; 1 Hill Ch., 32; 27 S. C., 286; 2 Bail., 324; 41 S. C., 435. *Second purchaser without notice is protected as bona fide purchaser:* 23 S. C., 501.

June 22, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. The object of the foregoing action was to set aside the deed of one Permelia F. Shockley to Col. B. W. Ball to a tract of land, situate and being in Laurens

County, in this State, and containing 100 acres, and also that of Col. B. W. Ball to T. H. Henderson for the same tract of land. All parties to the controversy agree that Permelia F. Shockley, in the year 1891, sought the services of Col. Ball, as an attorney at law, to remove a cloud upon the title to all the lands she owned, consisting of at least 127 acres, which cloud Permelia F. Shockley had caused to be fastened to her title by her deed to said lands to her niece, Miss Burns. Miss Burns, such grantee, after marriage, departed this life, leaving three infant children, Kitty, Othello, and Claude Burns. Just here the first difference between the parties to this action appears. One of plaintiff's witnesses testifies that Col. Ball agreed with Miss Shockley to remove the cloud from her land for $25. This statement is denied by Col. Ball with positiveness. Miss Shockley, under the advice of Col. Ball, as her first step in removing the cloud upon the title to her lands, made an agreement in writing with Mr. W. B. Putman to sell his wife 27 acres of her lands at the price of $189. The next step was to bring an action against the three Burns children to upset the title made to their mother by Miss Shockley. The next step was an agreement in writing, signed by Miss Shockley and Col. Ball, wherein the contract between them was set out touching the remuneration Col. Ball was to receive for his services in behalf of Miss Shockley, viz: she agreed to give Col. Ball *one-half* the value of the 27 acres sold to Mrs. Putman, and further to convey all her other lands—100 acres—to Col. Ball, reserving to herself a life estate therein, and also requiring that Col. Ball should pay her funeral expenses as well as those of last illness. This agreement was signed on the 14th September, 1891, and by it Miss Shockley bound herself to convey by deed said lands to Col. Ball. On the 24th October, 1891, Miss Shockley executed her deed to Col. Ball for said lands on the precise terms set out in the agreement as the consideration therefor. At this point, the parties to the action are wide apart, for the plaintiff has two white witnesses, W. B. Putman and Miss Nancy Shockley, who both

testify that after Miss Shockley had signed the deed to Col. Ball, and several years thereafter, in fact, Miss Shockley told each of them that she had made the deed to Col. Ball, reserving a life estate to herself in the lands she conveyed to him in order to prevent the plaintiff, Jefferson Sullivan, from selling her out of house and home for the debt she owed to said Sullivan. Col. Ball emphatically denies all this testimony, and relies upon the foregoing writings to show that such statements are not true. The defendant assails the alleged indebtedness of Miss Shockley to the plaintiff, and thereby imputes fraud to the judgment of plaintiff against Miss Shockley, which judgment was recovered in July, 1895. Miss Shockley died 31st day of August, 1895. This action was begun on the 26th September, 1896—the sheriff of Laurens County having previous thereto made a return of *nulla bona* on the execution of plaintiff. By this action it was plaintiff's desire that the deeds might be set aside, because the deed of Miss Shockley to Col. Ball was made, for a consideration "grossly inadequate and disproportionate to the value of the land conveyed," "and that said deed was executed by the said P. F. Shockley with the intent to delay, hinder and defraud the plaintiff in the collection of his debt." The Circuit Judge decreed in favor of the defendants on all the points presented to him. It now remains for us to consider these different propositions.

The first error complained of is that involved in the ruling of the Circuit Judge, that it was not competent to attack defendant, Ball's, deed from Miss P. F. Shockley, by proving by the witnesses, W. B. Putman and Nancy Shockley, that Permelia F. Shockley told them, after she had made the deed to Col. Ball, that she really conveyed said lands to Col. Ball in order to save a home for herself, as she knew the plaintiff by suing for the debt she owed him could sell her out of house and home. It is in testimony that Miss Shockley was in the possession of these lands when she made these declarations, and plaintiff relies upon this circumstance to add weight to his position that such admissions

were competent. Miss Permelia F. Shockley is dead; her life estate in these lands is ended. Certainly these admissions would have been competent as against her interest. If Miss Shockley were alive, and had offered her testimony to the effect that the true consideration of the deed from her to Col. Ball was not set out therein, but that, on the contrary, it was in fraud of the rights of her creditors, the testimony would have been admissible. However, the question now is, shall the "hearsay" statements of Miss P. F. Shockley be decreed competent? We cannot agree to any such proposition. To admit in testimony the unsworn statements made by Miss Shockley to W. B. Putman and Nancy Shockley, years after her deed was executed, would be a dangerous step, and put it in the power of a person to destroy his or her solemn deed to property executed years before. Another danger could be readily imagined. We would not be misunderstood; we do not intend to hold that a deed may not be assailed for fraud by showing that the true consideration thereof is not expressed in the deed, and that the consideration of the deed was fraudulent. We intend and do decide that the statements of a grantor, not made in the presence of the grantee, years after the deed is made and recorded, to third persons, impeaching the deed, such grantors being dead, should not be admitted as competent testimony.

Plaintiff objects to the admission of the testimony of J. W. Shockley and T. H. Henderson upon the ground that such testimony tended to invalidate the note given by Miss P. F. Shockley to the plaintiff as a subsisting obligation at the time it was put into judgment in the year 1895 (July); whereas he contends that such testimony so admitted would constitute a collateral attack upon a judgment. As we understand the object of defendants in introducing this testimony, it is to show that there was a collusion between Miss Shockley and the plaintiff, whereby a paper writing that was barred by the lapse of the statutory period at the time the deed from Miss P. F. Shockley to Col. Ball was made (in the year 1891), was made a present sub-

sisting indebtedness by such collusive conduct of said Miss Shockley and the plaintiff.  In other words, the defendants charge fraud to such parties.  Fraud constitutes one of the exceptions to the general rule that a judgment can only be assailed in a direct proceeding.  Besides, it was an issue raised by the answer that there was nothing due on the alleged note, and this testimony was responsive to that issue.

Plaintiff next objects to the Circuit decree, in that it was therein held that Col. Ball took his deed to the land for a present valuable consideration.  We overrule this exception.

The testimony, oral and written, shows that Miss Shockley had already, before the year 1891, made a deed covering all her lands to her niece, Miss Burns, and that this deed created such a cloud upon her title that W. G. Putman and his wife would not carry out their contract for the purchase of 27 acres thereof unless this cloud was removed from the title.  Thus it appears that until this cloud was removed from her title, Miss Shockley could not sell an acre.  When Col. Ball was employed to remove this cloud, he found Miss Shockley a hale and hearty woman, from 50 to 55 years of age, surrounded by friends; he was prudent enough to have his contract with this good lady reduced to writing, and signed in the presence of two witnesses.  The deed followed in short order the decree of Judge Hudson in favor of Miss Shockley.  This contract was coextensive with the litigation—having been made in writing before the lawsuit with the Burns children was over. It certainly was with Col. Ball a present and valuable consideration.

The fourth exception imputes error to that part of the decree which holds "that there was some doubt whether there was anything due on plaintiff's note when put into judgment," and also "that there was doubt whether Miss Shockley was insolvent when she made the deed."  We overrule this exception.  As to doubt as to the debt being owed when reduced to judgment, we cannot complain of the Circuit Judge being influenced by the curious facts

which cluster about this note. The character of a colored man, being a borrower of money himself; being a tenant from year to year of Miss Shockley; the secrecy attaching to the note; no steps ever taken by the plaintiff to upset the deed of Miss Shockley to Miss Burns; no credits being on the note at one time and then credits appear there—the date of the note being the year 1874. Then as to Miss Shockley's insolvency in 1891 : of this the Circuit Judge has doubts. Miss Shockley certainly had the half of $189 in cash; her rents were on hand, and her personal and household goods; and also a life estate in 100 acres of land. If Miss Shockley did not owe the plaintiff, she certainly was entirely solvent in the year 1891. There is doubt as to the existence of the plaintiff's debt at that time. We will not interfere with the doubts of the Circuit Judge on this point.

The fifth exception relates to an alleged error of the Circuit Judge, when he held that Miss Shockley did not intend to prefer B. W. Ball to any other creditor, or that the conveyance was not made with intent on her part to hinder, delay or defraud her creditors. When it was determined that the secret declarations of Miss Shockley, made long after her deed to Col. Ball was executed, to W. P. Putman and Nancy Shockley, and which declaration impugned the considerations of her deed to Col. Ball, were not competent testimony, we are at a loss to see what basis there is furnished by the competent testimony adduced at the hearing, oral or written, to support any contention of wrong doing when she made this deed to Col. Ball. No reference is made to giving Col. Ball any preference against any other creditor, nor is there the slightest reference to hindering, delaying or defrauding any one of her creditors by Miss P. F. Shockley. It is true, Mr. W. P. Putman does testify that Col. Ball agreed to do the work for $25. This statement is denied by Col. Ball, and is flatly contradicted by the agreement and deed made by the parties at the time the cloud to Miss Shockley's title was being removed. We overrule this exception.

The sixth exception complains that the Circuit Judge erred when he held that P. F. Shockley had the right to convey all her property to B. W. Ball in payment of a debt for services then rendered. The Circuit Judge, of course, meant to say that, when not hindered by debt, it was perfectly competent for a person to do as he pleased with his own; and even when one is in debt, if, in an effort to recover property otherwise lost, an ample *salvage,* so to speak, is allowed one who recovers such otherwise lost property, the Courts will not scrutinize too closely such a contract, provided the transaction is perfectly clean; that is to say, if the intentions of both parties are pure. The Circuit Judge having found as a fact that there was doubt as to the existence of plaintiff's debt in the year 1891, and also doubt as to Miss Shockley's insolvency at that time, and also that a present valuable consideration existed for the deed from Miss Shockley to Col. Ball—we cannot say he erred in such findings.

The appellant in his seventh exception objects to the decree of the Circuit Judge wherein it was held that there was no charge in the complaint of a cause of action under the assignment act, and that there was no evidence to sustain such a charge. It is very certain, as has been once before remarked, that when the testimony of W. P. Putman and Nancy Shockley, which purported to recite the secret statements made to them by Miss Shockley, years after the year 1891, was stricken out as incompetent, there was no basis for the charge that Miss Shockley preferred Col. Ball as against her other creditors. This being so, any ruling by the Circuit Judge as to an absence in the complaint of a charge, or cause of action, under the assignment act, became a pure abstraction, and, therefore, whether right or wrong, could do the plaintiff no harm. This exception is overruled.

The eighth exception alleges error in the Circuit Judge because he held that Col. Ball took his deed from Miss Shockley for the lands in question free from any right of

action of the plaintiff, and that Col. Ball conveyed the premises in question to T. H. Henderson free from any right of action on the part of the plaintiff. Of necessity these findings, or conclusions, of the Circuit Judge are based upon other findings of fact. For instance, the Circuit Judge concludes that there is grave doubt that the plaintiff, appellant, was a creditor of the estate of Miss Shockley; that there is great doubt that Miss Shockley was insolvent in the year 1891; that Col. Ball undertook, as a lawyer, to remove the cloud from the title of Miss Shockley to all her lands, and agreed to accept as compensation therefor the deed actually made to him by Miss Shockley for the 100 acres of land; that such was a present, *bona fide,* valuable consideration for such deed; that B. W. Ball had no knowledge of any improper motive in Miss Shockley, if any such existed; we cannot say these findings are not fully sustained by the testimony. This exception is overruled.

The next allegation of error is that of the Circuit Judge in not holding that Miss Shockley was insolvent at the time of the conveyance by her of the land to Col. Ball, and that such conveyance was in violation of the assignment act, by giving Col. Ball a preference. We must overrule this, the ninth, exception. If the plaintiff, Jefferson Sullivan, was not a creditor of Miss Shockley in 1891, when the deed was made, he has no cause of action at all. If he were a *bona fide* creditor in the year 1891, he could not complain that Miss Shockley, in her efforts to recover her property from the cloud then existing as to her title, made an honest contract with her attorney as to his compensation for services in removing the cloud upon the title to the land, which looked to a part of her lands as his fee, or compensation. It must be borne in mind that while the plaintiff in his complaint alleged that this fee of Col. Ball was grossly disproportioned to the value of the land recovered, there was no testimony offered tending to show any such fact. The contract of a person perfectly in his senses and surrounded by friends, sets out just what the compensation was to be. The deed carrying

out this contract was recorded in 1891 (November)—Col. Ball had sold the land quite a year before any stir is made, and that stir, the only stir, is made by one whose debt is more than doubtful. This exception, the ninth, is overruled.

In the tenth exception it is alleged that the Circuit Judge committed an error in holding that the consideration of the deed for the land from Miss Shockley to Col. Ball was grossly inadequate to the value thereof. As we have just hereinbefore held that there is no testimony on this subject—in the absence of such testimony, we could not hold that the Circuit Judge was in error. This exception is overruled.

The eleventh exception complains that the Circuit Judge erred in not holding that after the payment to B. W. Ball for his services mentioned in the deed, he held the land in trust for the other creditors of P. F. Shockley, and that T. H. Henderson took the land with notice of plaintiff's claim and subject to said trust. We must say we are at a loss to apply this exception to the case for appeal, for there is not one word in the testimony which goes to show that Col. Ball made any agreement as to this 100 acres of land, by which anything less than the fee to such lands vesting in him at the death of Miss Shockley and the payment of $100 to the Burns children. We are perfectly satisfied with the law as laid down in the case of *Ferguson* v. *Harrison et al.,* 41 S. C., 340. In the case cited, Mrs. Harrison, the wife, accepted a deed from her husband for a tract of land worth $3,000—she agreeing to pay two debts aggregating $1,400. Her husband was insolvent. This Court held on appeal that Mrs. Harrison held the tract to pay the $1,400 of debts, also in trust for the creditors of her husband for the balance of the $3,000. In the case at bar, there is nothing to show that the contract of Col. Ball and Miss Shockley was not fair; certainly there is nothing looking like any trust relation for the creditors of Miss Shockley. Of course, this applies also to T. H. Henderson, who is the alienee of Col. Ball.

The twelfth exception alleges error in the failure of the Circuit Judge to hold that Miss Shockley's conveyance to Col. Ball was intended by her as a preference to him over other creditors, in order to secui e a benefit to herself.   There is nothing to support this exception except the fact that Miss Shockley did receive a life estate in the lands.   If she had no creditors, she had a perfect right to make this reservation of a life estate in her lands.   Let this exception stand overruled.

The last exception presents error in not holding that a person insolvent or owing debts could not transfer her property to another upon consideration in part to pay her expenses of last illness.   There is no doubt that the propositions of law imbodied in this exception is perfectly sound.   The difficulty exists in applying it to the facts as found by the Circuit Judge, which facts so found we have approved.   Let the exception be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.